IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANNINE GABALDON, as Personal Representative
of the Estate of Zachary Gabaldon,

      Plaintiff,

vs.                    No.

JESSICA ACOSTA, JEFFREY MALDONADO,
ZEKE ACOSTA, SOCORRO POLICE DEPARTMENT,
CHIEF LAWRENCE ROMERO, in his capacity,
CAPTAIN MIKE WINDERS, individually,
DETECTIVE KENNETH GREENWALD individually,
NEW MEXICO DEPARTMENT OF TRANSPORTATION,
RHONDA FAUGHT, Secretary Department of Transportation,
in her official capacity,

      Defendants.

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, VEHICULAR HOMICIDE, LEAVING THE SCENE OF AN ACCIDENT WITH INJURIES, FAILURE TO GIVE AIDE TO INJURED VICTIM SUCH NEGLEGT LEADING TO DEATH, FAILURE TO MAINTAIN HIGHWAY IN THE SAFE CONDITION, NEGLIGENT OPERATION OF A MOTOR VEHICLE RESULTING IN INJURIES, CAMPLAINT FOR DAMAGES**

**FACTS COMMON TO ALL COUNTS
JURISDICTION AND VENUE**

  1. Plaintiff Annine Gabaldon is the mother of Zachary Gabaldon, deceased, and the Personal Representative of the Estate of her son Zachary Gabaldon. She brings this Wrongful Death action pursuant to §§41-2-1 through 3 *NMSA* (1978).

  2. Plaintiff is a resident of Socorro County, State of New Mexico.

  3. Zachary Gabaldon died as the result of being hit by a vehicle driven by the Defendant Jessica Acosta on August 4, 2006 in the County of Socorro.

4.  Defendant Jessica Acosta is a resident of the County of Socorro, State of New Mexico.

5.  Jeffrey Maldonado is a resident of the County of Socorro, State of New Mexico.

6.  The Defendant Zeke Acosta is the father of Jessica Acosta and is a resident of Socorro County, State of New Mexico.

7.  Chief Lawrence Romero was the Chief of the Socorro Police Department on August 4, 2006 and thereafter. The Department by statute as a municipal police department is charged with the investigation of crimes that occur within the municipal limits of the City of Socorro.

8.  Chief Lawrence Romero had supervisory responsibility over the duties of police officers employed by the Department to require full investigation of crimes within the jurisdiction of the Socorro Police Department.

9.  Captain Mike Winders was employed as a police officer by the Socorro Police Department on August 4, 2006 and thereafter.

10. Captain Peter Del Quarto was employed by the Socorro Police Department as a full time salaried police officer on August 4, 2006 and thereafter.

11. Detective Kenneth Greenwald was employed by the Socorro Police Department as a full time salaried police officer on August 4, 2006 and thereafter.

12. At all material times, Defendant officers were servants, agents and employees of defendant, Municipality (a person for purposes of §1983), so that their acts are imputed to the Municipality. Defendant Officers were acting pursuant to specific orders and directives from the Municipality and the Municipality provided each of them with an official

badge and identification card which designated and described its bearer as superintendent or police officer of the Department, respectively.

13. At all material times, defendant Officers, separately and in concert, acted under color and pretense of law; to wit, under color of the statutes, ordinances, regulations, customs and usage of the municipality. They separately and in concert engaged in the illegal conduct mentioned herein, recklessly and with callous disregard for plaintiff's rights, causing injury to the plaintiff and depriving plaintiff of the rights, privileges and immunities secured to him by the Fourteenth Amendment to the United States Constitution by the laws of the United States.

14. Rhonda Faught was the Secretary of the Department of Transportation of the State of New Mexico on August 4, 2006 a Department of the State of New Mexico. Rhonda Faught is sued in her official capacity as Department Secretary.

15. The crime which the subject of this cause of action took place on the Frontage Road of State Highway I-25 at 1457 Frontage Road. The Department of Transportation has the responsibility of constructing and maintaining the frontage road at the location of 1457 Frontage in Socorro County in a safe condition for the driving public including pedestrians who use the byway.

16. On August 4, 2006 Zachary Gabaldon was walking alongside the frontage of I-25 in Socorro County in the late evening. Zachary Gabaldon was sober and walking along the side of the road on a path available to the general public in a calm, careful and responsible manner. Zachary Gabaldon had the right to walk along the public highway; he did not obstruct or impede traffic. In all ways he was not a contributing factor to the collision which occurred. He was not negligent that evening and did not commit any negligent act that contributed to the collision.

17. On the evening of August 4, 2006 Jessica Acosta was at a party where she became intoxicated. She knowingly imbedded alcohol and knowingly smoked and consumed crack cocaine within minutes of driving her vehicle that evening. When she got into her vehicle she was intoxicated to such a degree that she was impaired such that her driving was affected uncoordinated and her concentration was limited. She was drunk. She was under the influence of narcotics. Her driving was impaired in violation of the law.

18. She left the party on August 4, 2006 with her daughter, her sister, Avery Acosta and her boyfriend, Jeffrey Maldonado.

19. As she drove along the frontage road she struck Zachary Gabaldon with her vehicle inflicting serious bodily injuries on the person of Zachary Gabaldon. The injuries were fatal.

20. At the time of the collision Jessica Acosta was listening to and adjusting the CD in her vehicle.

21. She was talking to the passenger or passengers in the car and was not paying her full time and attention to the highway.

22. When she struck decedent, her vehicle's headlights were positioned on the "bright" position.

23. She knew, or had reason to know that, she hit a human being.

24. Defendant Jeffrey Maldonado also was aware that a pedestrian was struck by the vehicle in which he was riding.

25. Zachary Gabaldon was struck so hard that his body was thrown over the hood and impacted on the windshield of the vehicle and as the vehicle continued, was swept aside, breaking a side-view mirror on the vehicle.

26. Neither Jessica Acosta nor Jeffrey Maldonado rendered assistance or aide to the victim, Zachary Gabaldon.

27. Defendant Jessica Acosta then left the scene at a high rate of speed.

28. As a result of the refusal of Jessica Acosta and Jeffrey Maldonado to render aide to the victim Zachary Gabaldon his injuries remained untreated.

29. Defendant Jessica Acosta then drove to her father's home at 1604 Camino real where she discharged her passengers and told a family member, that she had hit a person and that she had left the scene.

30. One or more of defendant Jessica Acosta's family members proceeded to, what defendant Jessica Acosta believe to be, the point of impact between her vehicle and Zachary Gabaldon.

31. Defendants John Doe or Jane Doe adjusted the body of Zachary Gabaldon and moved his body to the side of the road.

32. Upon information and belief, Zachary Gabaldon was alive at the time.

33. Defendants John Doe or Jane Doe did not call 911, did not render aide to the decedent Zachary Gabaldon, and did not go for help at the local and closest residence: 20 feet from where he left the body near the Baca residence at 1457 Frontage Road.

34. Defendant Jessica Acosta returned to her house, cleaned up her car and washed the exterior of the vehicle and destroyed and concealed evidence of her crime. She then called 911 and reported what she called an "accident where she had just hit someone walking." Jessica Acosta did not give a correct location of the body of Zachary Gabaldon and the 911 personnel did not get a clear and correct location.

35. When the police responded to the scene of the crime the officers first went to Zeke Acosta's house at 1604 Camino Real before going to the aide of victim Zachary Gabaldon. The misinformation of the location of the crime scene and delay the police caused by visiting Zeke Acosta contributed to the death of Zachary Gabaldon.

36. When police and medical personnel finally arrived at the scene of the collision Zachary Gabaldon was still alive.

37. Emergency Medical Technicians then rendered aide to Zachary Gabaldon.

38. When the ambulance and medical employees arrived at the scene they observed that Zachary Gabaldon's person had been removed from the point of impact and laid off the roadway and his legs placed on a position of repose.

39. Zachary Gabaldon was still alive at the time the ambulance arrived and the medical technicians proceeded to commence life saving aide.

40. Zachary Gabaldon was then taken by ambulance to the Socorro General Hospital where he died.

41. Had the Defendant Jessica Acosta, Jeffrey Maldonado, Zeke Acosta and police Officers, unknown at this time, not delayed in reporting the crime or recovery of the victim Zachary Gabaldon would have lived.

### COUNT ONE (1)
### (Negligence Per Se)

42. Plaintiff incorporates by reference the allegations contained in Paragraphs One (1) through Forty-One (41) as though fully stated herein.

43. At all times material, Zachary Gabaldon was using due care and exercising caution in the operation of her vehicle.

44. At all times material there were in force and effect the following statutes:

   A. The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible, but shall then immediately return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 66-7-203 NMSA 1978. Every such stop shall be made without obstructing traffic more than is necessary;

   B. Any person failing to stop or to comply with the requirements of Section 66-7-203 NMSA 1978 where the accident results in great bodily harm or death is guilty of a fourth degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978;

   C. Any person who knowingly fails to stop or to comply with the requirements of Section 66-7-203 NMSA 1978 where the accident results in great bodily harm or death is guilty of a third degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978.   §66-7-201 *NMSA (1989)*; and

   D. The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving and shall upon request exhibit his driver's license to the person struck or the driver or occupant of or person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.  §66-7-203. *NMSA* (1978).

45. These statutes were enacted for the benefit and protection of the Plaintiff Decedent and prohibited the conduct of Defendant **JESSICA ACOSTA**.

46. Defendant, **JESSICA ACOSTA**, by her actions and inactions, was negligent as a matter of law.

47. As a result of defendant's negligence per se, decedent suffered damages and death in an amount to be shown at Trial.

## COUNT TWO (2)
## (Negligence)

48. Plaintiff incorporates by reference the allegations contained in Paragraphs One (1) through Forty-Seven (47) as though fully stated herein.

49. Defendant **JESSICA ACOSTA** owed Plaintiff Decedent a duty of ordinary care in the operation and maintenance of her motor vehicle.

50. Defendant **JESSICA ACOSTA** breached this duty of care.

51. The acts and omissions constituting negligence of Defendant **JESSICA ACOSTA** include, but are not limited to:

   A. failure to keep a proper lookout;

   B. failure to keep a vehicle under control;

   C. failure to operate a vehicle in a safe and reasonable manner;

   D. inattention to existing conditions;

   E. operating a motor vehicle at unsafe speeds;

   F. failure to take proper evasive actions;

   G. failure to maintain a vehicle in safe operating condition;

   H. failure to render aid; and

   I. failure to report an automobile collision with a pedestrian.

52. The direct and proximate cause of **Zachary Gabaldon's** death was the negligence of Defendant **JESSICA ACOSTA**.

53. Defendants' deliberate indifference to the welfare of Decedent Zachary Gabaldon and Plaintiff were willful, wanton and reckless actions and or inactions, which rose to the level warranting the award of exemplary damages.

54. These actions and inactions were done without the exercise of even slight care under the circumstances.

55. An award of exemplary damages would serve to punish the conduct of Defendants and serve to deter similar conduct in others.

56. Defendants actions and inactions rise to the level of wrongful conduct, neglect or default as and against Zachary Gabaldon and Plaintiff.

57. As a direct and proximate result of defendant's conduct, plaintiff's decedent was caused and did suffer conscious pain and suffering for an undetermined amount of time immediately before his death.

58. As a further direct and proximate result of defendant's conduct, plaintiff is entitled to damages for the wrongful death of decedent, with due regard for any aggravating circumstances attending her death, and including compensation for decedent's pain and suffering before death, the value of the life of decedent, medical expenses between the time of injury and death, the present value of lost future wages and lost future household services, the value of lost guidance and counseling to his family, and funeral and burial expenses.

59. As a direct and proximate result of the negligent acts and omissions of Defendants, Plaintiff's family members have been deprived of the love, companionship, guidance and support.

60. The acts of Defendant, as stated in this complaint, were reckless and wanton and which rise to the level warranting imposition of punitive damages.

## COUNT THREE (3)
### (Negligent and/or Intentional Spoliation)

61. Plaintiff incorporates by reference the allegations contained in Paragraphs One (1) through Sixty (60) as though fully stated herein.

62. Upon information and belief, defendants JESSICA ACOSTA, JEFFREY MALDONADO, ZEKE ACOSTA, SOCORRO POLICE DEPARTMENT, CHIEF LAWRENCE ROMERO, in his capacity, CAPTAIN MIKE WINDERS, individually, DETECTIVE KENNETH GREENWALD and other JOHN DOES I –V and JANE DOES I -5- "systematically" embarked on the "knowing and intentional destruction of evidence" relating to decedent's death and its attendant circumstances.

63. Defendant left the scene of the collision in the automobile which struck decedent, and took such action as to conceal, hide, obscure, or cover-up any evidence which could be recovered from that vehicle.

64. Upon information and belief, such action was done with the assistance or cooperation of others, including, defendants JEFFREY MALDONADO, ZEKE ACOSTA, KENNETH GREENWALD and other JOHN DOES I –V and JANE DOES I -5-

65. Upon information and belief, defendant KENNETH GREENWALD was acting under color of law as a law enforcement official, employed with the SOCORRO POLICE DEPARTMENT and under the supervision of CHIEF LAWRENCE ROMERO and CAPTAIN MIKE WINDERS.

66. Upon information and belief, defendant KENNETH GREENWALD knew or should have known his actions, in concert with other defendants, violated decedent's civil rights contrary to Federal law.

67. At the time of defendant KENNETH GREENWALD's action in covering or concealing evidence, there was a policy of preserving evidence related to the existence of a possible crime.

68. Defendants conduct was outrageous and violated decedent's constitutionally protected rights.

69. As a result of the Defendants wrongful conduct which led to the death of the decedent, and in accordance with §41-2-1 *NMSA* (1978), the decedent endured significant conscious pain and suffering before his expiration; and Plaintiff, as sole heir and Personal Representative of decedent's estate, suffered damages, including, but not limited to, pecuniary and statutory damages as well as compensation for the pain and suffering endured by decedent prior to his death.

## COUNT FOUR (4)
### (STATE TORT CLAIMS §§41-4-1 to 27 *NMSA* (1978))

70. Plaintiff incorporates by reference the allegations contained in Paragraphs One (1) through Sixty-Nine (69) as though fully stated herein.

71. Upon information and belief, defendants, SOCORRO POLICE DEPARTMENT, CHIEF LAWRENCE ROMERO, in his official capacity, CAPTAIN MIKE WINDERS, individually, DETECTIVE KENNETH GREENWALD owed a duty of care, ordinarily exercised by reasonably prudent and qualified law enforcement officers, to investigate criminal activities resulting in the death of the decedent.

72. Further, such Defendant owed a duty of care to immediately respond to the scene of the collision in which the automobile struck decedent, resulting in the death of the decedent.

73. As a result of the Defendants wrongful conduct and failures to act, the decedent endured significant, conscious pain and suffering before his expiration; and plaintiff, as sole heir and Personal Representative of decedent's estate, suffered damages, including, but not limited to, pecuniary and statutory damages as well as compensation for the pain and suffering endured by decedent prior to his death.

## COUNT FIVE (5)
## (STATE TORT CLAIMS §§41-4-1 to 11 *NMSA* (1978))

74. Plaintiff incorporates by reference the allegations contained in Paragraphs One (1) through Seventy -Three (73) as though fully stated herein.

75. Upon information and belief, defendants NEW MEXICO DEPARTMENT OF TRANSPORTATION, RHONDA FAUGHT, Secretary Department of Transportation, in her official capacity, at all times material, were responsible for the maintenance of the highway upon which decedent was struck.

76. Defendant New Mexico Department of Transportation Department has had the common-law duty to exercise ordinary care to protect the general public from foreseeable harm on the highways of the State of New Mexico.

77. Once it constructed the highway upon which decedent was struck, Defendant New Mexico Transportation Department failed to maintain that highway by neglecting the maintenance of the shoulder of that road.

78. After it constructed the highway upon which decedent was struck, Defendant New Mexico Transportation Department failed to maintain adequate lighting along the shoulder of that road.

79. As a result of the defendant's wrongful conduct and failures to act, the decedent endured significant, conscious pain and suffering before his expiration; and plaintiff, as sole heir and Personal Representative of decedent's estate, suffered damages, including, but not limited to, pecuniary and statutory damages as well as compensation for the pain and suffering endured by decedent prior to his death.

**WHEREFORE,** plaintiff, in her capacity as sole heir and Personal Representative of decedent's estate, demands judgment in an amount to be determined at trial, plus interest and costs, including reasonable attorney's fees, and such other and further relief as this Court deems just.

Respectfully submitted,

_____
SHANNON ROBINSON
1121 4th St. N.W., Suite 1-A
Albuquerque, New Mexico 87102
(505) 998-6603
(505) 998-6603 fax